Joseph G. Went, Esq.
Nevada Bar No. 9220
Sydney R. Gambee, Esq.
Nevada Bar No. 14201
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134
Phone: (702) 669-4619
Fax: (702) 475-4199
JGWent@hollandhart.com
SRGambee@hollandhart.com

*Attorneys for Peter Lee*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PETER LEE, an individual, | CASE NO.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| NATIVE GAMES AMERICA, LLC, a Nevada limited liability company; NATIVE GAMES ENTERTAINMENT INTERNATIONAL LIMITED, a New Zealand limited corporation; JEFF MARTINEZ, an individual; MARK ANTHONY STROM, an individual; | |
| Defendants. | |

Plaintiff Peter Lee ("Mr. Lee" or "Plaintiff"), by and through his attorneys of the law firm of Holland & Hart LLP, hereby complains and alleges against Defendants Native Games America, LLC ("NGA" or "Borrower"), Native Games Entertainment International Limited ("NGEI"), Jeff Martinez ("Mr. Martinez"), and Mark Anthony Strom ("Mr. Strom") (collectively "Defendants") as follows.

**THE PARTIES**

1.      Mr. Lee is an individual residing in Hong Kong, China.

2.      Plaintiff is informed and believes and thereon alleges NGA was at all times

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd FloorLas Vegas, NV  89134

9358418_1

relevant hereto, a limited liability company formed under the laws of Nevada, and doing business in Clark County, Nevada.

3. Plaintiff is informed and believes and thereon alleges NGEI was at all times relevant hereto, a limited corporation formed under the laws of New Zealand, and doing business in Clark County, Nevada.

4. Plaintiff is informed and believes and thereon alleges Mr. Martinez is an individual residing in Clark County, Nevada.

5. Plaintiff is informed and believes and thereon alleges Mr. Strom is an individual residing in Clark County, Nevada.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this case pursuant to Article III, § 2 of the United States Constitution and 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00.

7. This Court has personal jurisdiction over Defendants.

8. Venue is proper in this Court because the laws of the State of Nevada govern the contract that is the subject of this dispute.

**GENERAL ALLEGATIONS**

A. **The Master Loan Agreement, the Note and Payment Obligations Under the Stock Purchase Agreement.**

9. On March 18, 2016, Mr. Lee entered into a Master Loan Agreement ("MLA") with NGA, wherein Mr. Lee agreed to lend and NGA agreed to borrow the principal sum of $505,000.00 (the "Loan").

10. On or about March 18, 2016, NGA executed a promissory note (the "Note") wherein it promised to pay to Mr. Lee the original principal sum of $505,000.00 together with interest thereon.

11. Pursuant to the terms of the Note, NGA was to make its first payment of principal and interest to Mr. Lee on August 1, 2016, in the total amount of $47,133.00.

9358418_1

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd FloorLas Vegas, NV 89134

12. Pursuant to subsection 5.03(h) of the MLA, Mr. Lee assisted NGA with satisfying certain financial obligations to a third party, CrowdGather, Inc., a Nevada corporation ("CrowdGather") by directly transferring certain loan proceeds to CrowdGather.

13. Nonetheless, NGA acknowledges that one hundred percent (100%) of the Loan is due and payable by NGA.

14. Exhibit "A" to the MLA provides that of the $505,000.00 Loan, $145,000.00 was distributed prior to execution of the MLA as follows:

     a.    $5,000 to CrowdGather on February 15, 2016;

     b.    $3,000 to CrowdGather on February 19, 2016;

     c.    $75,000 to Plaor (and $12,000 to CrowdGather) on January 26, 2016;

     d.    $45,000 to Plaor on February 15, 2016; and

     e.    $17,000 to Plaor on February 19, 2016.

15. Exhibit "A" to the MLA further provides that of the $505,000.00 Loan, $180,000.00 was transferred directly from Mr. Lee to CrowdGather, and $180,000.00 was transferred directly from Mr. Lee to Plaor, Inc., a Delaware corporation ("Plaor"), which is wholly owned by CrowdGather.

16. Exhibit "J" to the MLA provides a list of the following Plaor/CrowdGather creditors pursuant to loan agreements and promissory notes:

| Name | Date | Original Principal | Principal Amount as of Date of Agreement |
|---|---|---|---|
| Genesis Maintenance | 20-Nov-2014 | $150,000 | $169,500 |
| Bosko Djordjevic | 21-Nov-2014 | $100,000 | $113,000 |
| Benjamin Yeung | 01-Dec-2014 | $165,000 | $186,450 |
| Jane Young | 01-Dec-2014 | $165,000 | $186,450 |
| Peter Lee | 01-Dec-2014 | $200,000 | $226,000 |
| Peter Lee | 03-Dec-2014 | $770,000 | $870,100 |
| Peter Lee | 16-Jul-2015 | $50,000 | $52,500 |

17. The Success Fee Agreement attached as Exhibit "G" to the MLA grants to Mr. Lee certain ownership interests in NGA held separately by each of Mr. Martinez and Mr. Strom at Mr. Lee's option (the "Option") or, alternatively, a cash payment (the "Success Fee"), as an incentive for Mr. Lee's assistance with business development for NGA.

18. Pursuant to subsection 5.03(j) of the MLA, in the event NGA purchases the

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd FloorLas Vegas, NV 89134

9358418_1

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd FloorLas Vegas, NV  89134

shares or other material assets of Plaor, which is wholly owned by CrowdGather, NGA agrees to assume all of Plaor's and CrowdGather's payment and other obligations to its third party vendor and service provider agreements and creditors. NGA further agrees to prioritize its payment obligations as follows:

      a.      First, to repayment of Plaor/CrowdGather creditors, as identified in Exhibit J to the MLA;

      b.      Second, to repayment of the Loan;

      c.      Third to payment of the Success Fee.

19.      On or about March 18, 2016, NGA did execute a Stock Purchase Agreement ("SPA") with CrowdGather, whereby NGA purchased all of CrowdGather's right, title, and interest in Plaor.

20.      The SPA provides that NGA also assumes debt and liabilities of Plaor as described in Annex O to the SPA and Exhibit J to the MLA ("Plaor Loans").

21.      The SPA further provides that the notes of such debts shall be modified to require that NGA repay all creditors in equal monthly installments over the fifteen (15) months following the closing of the sale.

22.      The Modification of Promissory Note attached as Annex Q to the SPA as an exemplar provides that such payments commence July 31, 2016.

23.      The Modification also provides that interest payments are due quarterly at a rate of eight percent (8%) per year.

24.      Subsection 8.01 of the MLA defines the events that constitute a default under the MLA.

25.      Failure of NGA to pay the principal of, or interest on, the Note, or any other note when due and payable, constitutes an Event of Default under subsection 8.01(1) of the MLA.

26.      Failure of NGA to repay any of its indebtedness for borrowed money (other than the Note), or interest or premium thereon, when due, constitutes an Event of Default under subsection 8.01(6) of the MLA.

9358418_1

27.     Subsection 8.02 of the MLA delineates the remedies Mr. Lee may exercise upon any Event of Default.

28.     Under subsection 8.02(1) of the MLA, upon any Event of Default, Mr. Lee may, by notice to NGA, declare the Note, all interest thereon, and all other amounts payable under the MLA to be forthwith due and payable.

29.     Under subsection 8.02(3) of the MLA, upon any Event of Default, NGA shall immediately meet its obligations as set out in the Conditional Assignment Agreement, attached to the MLA as Exhibit "D".

**B.     The General Security Agreement.**

30.     On or about March 18, 2016, as security for 1) repayment of the Note, 2) all indebtedness, obligations, and liabilities of NGA in all other agreements executed or delivered by NGA in connection with the Note, and 3) repayment and performance of all other indebtedness, liabilities, and obligations of NGA to Mr. Lee then existing or thereafter arising, NGA executed a General Security Agreement (the "GSA").

31.     Subsection 1.1 of the GSA grants to Mr. Lee a continuing security interest in the following collateral, whether then existing or thereafter arising and wherever located:

a.     all deposits and accounts receivable acquired by NGA in the operation of NGA's business;

b.     all rights of NGA under all contracts, agreements and reservations acquired in connection with the operation of NGA's business;

c.     all inventory, chattel, paper, accounts, equipment, and general intangibles;

d.     all shares of stock and any other ownership interests in any business entity;

e.     all assets, tangible or intangible, owned by NGA, including but not limited to cash, investments, accounts receivable, inventory of raw materials, work in progress or finished goods, equipment, trade names, and goodwill;

f.     all accessions, attachments, accessories, tools, parts, supplies, replacements, and additions to any of the collateral described herein, whether added now or later;

g.     all products and produce of any of the property described in this Section

9358418_1

1;

h.    all accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Section 1;

i.    all proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Section 1, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement, or other process; and

j.    all records and data relating to any of the property described in this Section 1, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of NGA's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

32.    Subsection 1.3 of the GSA provides that, in addition to the Note, it secures all obligations, debts and liabilities, plus interest thereon, of NGA to Mr. Lee, or any one or more of them, as well as all claims by Mr. Lee against NGA or any one or more of them, whether then existing or thereafter arising, whether related or unrelated to the purpose of the Note.

33.    In subsection 3.1(c) of the GSA, NGA represents and warrants to Mr. Lee that the Collateral is used solely for commercial purposes.

34.    Subsection 5.1(a) empowers Mr. Lee, after any Event of Default has occurred, to demand, sue for, collect, receive and give acquaintance for any and all moneys due or to become due upon or by virtue thereof.

35.    Subsection 6.1 of the GSA defines the events that constitute a default under the GSA.

36.    NGA's default in the payment of any installment of principal or interest on the Note, the obligations or any other sum secured by the GSA when due, and the failure to cure such default within ten (10) days after written notice of default to NGA, constitutes an Event of Default under subsection 6.1(a) of the GSA.

37.    Subsection 7.1 of the GSA delineates the remedies Mr. Lee may exercise upon any Event of Default.

38.    Under subsection 7.1(a) of the GSA, upon any Event of Default, Mr. Lee may exercise all the rights and remedies under Revised Article 9 of the Uniform Commercial Code

9358418_1

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd FloorLas Vegas, NV  89134

("UCC"), including, without limitation, selling the Collateral, or any part or component thereof, at one or more public or private sales.

39.     Under subsection 7.1(b) of the GSA, upon any Event of Default, Mr. Lee may require NGA to assemble all or any part of the Collateral and make it available to Mr. Lee.

40.     Under subsection 7.1(c) of the GSA, Mr. Lee must give NGA at least ten (10) business days' prior written notice of its intention to make a public or private sale.

41.     Under subsection 7.1(e) of the GSA, upon any Event of Default, Mr. Lee may, instead of exercising the power of sale, proceed by a suit or suits at law or in equity to foreclose the Security Interests and sell the Collateral, or any portion thereof, under a judgment or decree of a court or courts of competent jurisdiction.

42.     Under subsection 8.1 of the GSA, upon any Event of Default, Mr. Lee shall have the right and power to take possession of all or any part of the Collateral.

43.     On or about July 5, 2016, a UCC Financing Statement was filed with the Office of the Secretary of State of the State of Nevada, document number 2016018736-4, listing NGA as Debtor, giving notice of Mr. Lee's security interests pursuant to the GSA ("GSA Financing Statement").

44.     The GSA Financing Statement lists the same collateral as listed in the GSA.

**C.     The Conditional Assignments.**

45.     Pursuant to subsection 5.03(i) of the MLA, upon any Event of Default under the MLA, the Conditional Assignment and Waiver executed by NGEI shall be enforced by Mr. Lee, resulting in the automatic transfer of the intellectual property identified therein (the "IP").

46.     On or about March 18, 2016, NGEI executed a Conditional Assignment and Waiver No. 1 (the "IP Assignment") as security for the Loan, whereby NGEI agreed to conditionally assign all of its rights, title, and interest in the IP to Mr. Lee upon any Event of Default under the MLA by NGA.

/ / /

/ / /

9358418_1

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor Las Vegas, NV  89134

47.     The IP consists of the following the patents listed in Schedule 1 to Assignment:

| Patent or Application Number | Date | Description |
|---|---|---|
| U.S. 8,876,589 | Granted 04-Nov-2014 | Multi-wager slot gaming system |
| U.S. 7,575,513 | Granted 18-Aug-2009 | Double draw poker-type reel-type gaming system |
| U.S. 7,329,180 | Granted 12-Feb-2008 | Gaming system with multiple generic and subgeneric characteristics |
| Australia 2004205089 | Granted 17-Aug-2004 | Reel-type gaming system |
| Australia 2013270542 | Filed 12-Dec-2013 | Multi-wager slot gaming system |
| Canada 2477500 | Filed 16-Aug-2004 | Reel-type gaming system |

48.     On or about March 18, 2016, NGEI executed a Conditional Assignment and Waiver No. 2 (the "License Agreement Assignment") as security for the Loan, whereby NGEI agreed to conditionally assign all of its right, title, and interest in a certain Master License Agreement dated August 9, 2011 between NGEI and NGA ("License Agreement") to Mr. Lee upon any Event of Default under the MLA by NGA.

49.     Under subsection 2 of the License Agreement Assignment, NGA consents to NGEI's assignment of its rights, title, and interest in the License Agreement to Mr. Lee upon any Event of Default.

50.     Together, the IP Assignment and License Agreement Assignment shall be referred to as the "Conditional Assignments."

**D.      Membership Interest Security Agreements.**

51.      On or about March 18, 2016, Mr. Martinez executed a Membership Interest Security Agreement No. 1 (the "Martinez MISA") as security for the Loan, the Note, and the Plaor Loans, whereby Mr. Martinez grants Mr. Lee a security interest in certain collateral to secure performance and payment of all indebtedness of Mr. Martinez and/or NGA to Mr. Lee, whether then existing or later arising.

52.     Under subsection 1.02 of the Martinez MISA, Mr. Martinez grants a security interest in the following collateral:

a.     All of Mr. Martinez's membership interest in NGA, being twenty-seven percent (27%) of all membership of NGA at the time of execution;

b.     All dividends on the foregoing, all proceeds of the foregoing, and all

9358418_1

substitutions for the foregoing;

    c.    All rights of Mr. Martinez to participate in governance of NGA; and

    d.    All accounts, accounts receivable, contract rights, rights, revenues, income, benefits, general intangibles, money, instruments, chattel paper, documents, files, computerized or other records, books, ledger sheets, rights to payment, contract rights and the like appertaining to, generated from, arising out of, or belonging to the Collateral, and all proceeds thereof.

53.    Pursuant to subsection 1.03 of the Martinez MISA, all property acquired by Mr. Martinez after execution of the Agreement is subject to the security interest.

54.    Under subsection 4.01 of the Martinez MISA, an Event of Default occurs when default occurs in the timely payment or performance of any obligation, covenant, or liability in any written agreement between Mr. Lee and Mr. Martinez or NGA pertaining to the indebtedness secured by the Agreement.

55.    Under subsection 5.01 of the Martinez MISA, upon an Event of Default, Mr. Lee may exercise any rights and remedies granted by the Nevada Business and Commerce Code or by the Agreement, including, without limitation:

    a.    Requiring Mr. Martinez to deliver to Mr. Lee all books and records relating to the collateral; and

    b.    Selling, leasing, assigning, giving an option to purchase, or otherwise disposing of any of the collateral, in one or more parcels, in accord with the rights, remedies, and duties of a secured party under Article 9 of the UCC after giving notice as required by that Article.

56.    On or about July 5, 2016, a UCC Financing Statement was filed with the Office of the Secretary of State of the State of Nevada, document number 2016018735-2, listing NGA as Debtor, giving notice of Mr. Lee's security interests pursuant to the Martinez MISA ("Martinez Financing Statement").

57.    The Martinez Financing Statement lists the same collateral as listed in the Martinez MISA.

58.    On or about March 18, 2016, Mr. Strom executed a Membership Interest Security Agreement No. 2 (the "Strom MISA") as security for the Loan, the Note, and the Plaor

9358418_1

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd FloorLas Vegas, NV 89134

Loans, whereby Mr. Strom grants Mr. Lee a security interest in certain collateral to secure performance and payment of all indebtedness of Mr. Strom and/or NGA to Mr. Lee, whether then existing or later arising.

59.     Under subsection 1.02 of the Strom MISA, Mr. Strom grants a security interest in the following collateral:

a.   All of Mr. Strom's membership interest in NGA, being twenty-seven percent (27%) of all membership of NGA at the time of execution;

b.   All dividends on the foregoing, all proceeds of the foregoing, and all substitutions for the foregoing;

c.   All rights of Mr. Strom to participate in governance of NGA; and

d.   All accounts, accounts receivable, contract rights, rights, revenues, income, benefits, general intangibles, money, instruments, chattel paper, documents, files, computerized or other records, books, ledger sheets, rights to payment, contract rights and the like appertaining to, generated from, arising out of, or belonging to the Collateral, and all proceeds thereof.

60.     Pursuant to subsection 1.03 of the Strom MISA, all property acquired by Mr. Strom after execution of the Agreement is subject to the security interest.

61.     Under subsection 4.01 of the Strom MISA, an Event of Default occurs when default occurs in the timely payment or performance of any obligation, covenant, or liability in any written agreement between Mr. Lee and Mr. Strom or NGA pertaining to the indebtedness secured by the Agreement.

62.     Under subsection 5.01 of the Strom MISA, upon an Event of Default, Mr. Lee may exercise any rights and remedies granted by the Nevada Business and Commerce Code or by the Agreement, including, without limitation:

a.   Requiring Mr. Strom to deliver to Mr. Lee all books and records relating to the collateral; and

b.   Selling, leasing, assigning, giving an option to purchase, or otherwise disposing of any of the collateral, in one or more parcels, in accord with the rights, remedies, and duties of a secured party under Article 9 of the UCC after giving notice as required by that Article.

/ / /

/ / /

9358418_1

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor Las Vegas, NV  89134

63. On or about July 5, 2016, a UCC Financing Statement was filed with the Office of the Secretary of State of the State of Nevada, document number 2016018734-0, listing NGA as Debtor, giving notice of Mr. Lee's security interests pursuant to the Strom MISA ("Strom Financing Statement").

64. The Strom Financing Statement lists the same collateral as listed in the Strom MISA.

**E.      NGA's Default on the MLA and GSA.**

65. NGA did not make its first payment under the Note and Plaor Loans on August 1, 2016.

66. On August 5, 2016, Plaintiff caused a letter to be sent via email and registered mail to NGA notifying it that its failure to pay as required constitutes an Event of Default under Sections 8.01(1) and 8.01(6) of the MLA and Section 6.1(a) of the GSA.

67. Plaintiff notified NGA that a total amount of $191,660.00 was due to Plaintiff on or before August 1, 2016 pursuant to the Note and the Plaor Loans.

68. Plaintiff further notified NGA that its failure to tender payment on other Plaor Loans to Genesis Maintenance ("Genesis") and Bosko Djordjevic ("Djordjevic") constitutes an Event of Default. Together, the nonpayment under the Note and the Plaor Loans are referred to as the "Default."

69. Plaintiff notified NGA that it had five (5) calendar days, until August 10, 2016, to cure the Default.

70. Plaintiff informed NGA that if NGA did not cure, Plaintiff would declare the unpaid principal balance and accrued interest, if any, on the Note immediately due.

71. Plaintiff informed NGA that he was further exercising his right to inspect NGA's financial and other records, including the records of Plaor, NGA's subsidiary and affiliate.

72. Plaintiff notified NGA that it would take immediate control over all assets of NGA, and would also immediately assume control over Plaor.

73. NGA did not cure the Default.

9358418_1

74.     NGA has not delivered control of its assets or control of Plaor to Plaintiff.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract - against all Defendants)

75.     Plaintiff repeats, realleges, and incorporates all of the preceding allegations as though fully set forth herein.

76.      Plaintiff and NGA entered into valid, binding, and existing contracts in the form of the MLA, the Note, and the GSA.

77.     Plaintiff and NGEI entered into valid, binding, and existing contracts in the form of the Conditional Assignments.

78.     Plaintiff and Mr. Martinez entered into a valid, binding, and existing contract in the form of the Martinez MISA.

79.     Plaintiff and Mr. Strom entered into a valid, binding, and existing contract in the form of the Strom MISA.

80.     Plaintiff duly performed its obligations under the MLA, the Note, the GSA, the Conditional Assignments, the Martinez MISA, and the Strom MISA.

81.     NGA breached the terms of the MLA, the Note, and the GSA by failing to make payments when due under the Note and Plaor Loans.

82.     NGEI breached the terms of the Conditional Assignments when it failed to deliver rights in the IP and the License Agreement to Plaintiff upon NGA's Default.

83.     Mr. Martinez breached the terms of the Martinez MISA when he failed to deliver all books and records relating to the collateral upon NGA's Default.

84.     Mr. Strom breached the terms of the Strom MISA when he failed to deliver all books and records relating to the collateral upon NGA's Default.

85.     As a direct and proximate result of Defendants' breaches, Plaintiff has been damaged in an amount in excess of $75,000.00, plus accrued interest thereon.

86.     Plaintiff's damages include, but are not limited to, the entire $505,000.00 balance of the Note and the unpaid amounts under the Plaor Loans, plus interest thereon.

9358418_1

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd FloorLas Vegas, NV  89134

87.     As a further result of Defendants' acts or omissions, Plaintiff was compelled to retain legal counsel to prosecute this claim and Defendants are liable for Plaintiff's reasonable and necessary attorneys' fees and costs of court.

## SECOND CLAIM FOR RELIEF

**(Breach of Covenant of Good Faith and Fair Dealing – against all Defendants)**

88.     Plaintiff repeats, realleges, and incorporates all of the preceding allegations as though fully set forth herein.

89.     Plaintiff and Defendants are parties to valid and binding contracts, including the MLA, the Note, the GSA, the Conditional Assignments, the Martinez MISA, and the Strom MISA.

90.     As a party to the contracts, Defendants owed a duty of good faith to Plaintiff.

91.     Defendants breached that duty by performing their contracts with Plaintiff in a manner unfaithful to the purpose of the contracts, and failed to pay Plaintiff under the terms of the MLA, the Note, and the GSA, and failed to deliver collateral pursuant to the GSA, the Conditional Assignments, the Martinez MISA, and the Strom MISA.

92.     Plaintiff's justified expectations in Defendants' performance of their contractual obligations were denied by Defendants' acts and omissions described herein.

93.     As a direct and proximate cause of Defendants' breaches, Plaintiff has been damaged as described herein, in an exact amount to be determined at trial.

94.     As a further result of Defendants' acts or omissions, Plaintiff was compelled to retain legal counsel to prosecute this claim and Defendants are liable for Plaintiff's reasonable and necessary attorneys' fees and costs of court.

## THIRD CLAIM FOR RELIEF

**(Claim and Delivery – against all Defendants)**

95.     Plaintiff repeats, realleges, and incorporates all of the preceding allegations as though fully set forth herein.

96.     Defendants wrongfully possess and maintain dominion and control over the

9358418_1

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor Las Vegas, NV  89134

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd FloorLas Vegas, NV  89134

property pledged as collateral for the Note and Plaor Loans and in which Plaintiff claims a security interest pursuant to the GSA, Conditional Assignments, Martinez MISA, and Strom MISA.

97.     Specifically, NSA wrongfully possesses and maintains dominion and control over the collateral identified by the GSA.

98.     NGEI wrongfully possesses and maintains dominion and control over the collateral identified by the Conditional Assignments, including, without limitation, the IP and any and all interest in the License Agreement.

99.     Mr. Martinez wrongfully possesses and maintains dominion and control over the membership interest in NGA, including, without limitation, the books and records relating to the same, identified by the Martinez MISA.

100.     Mr. Strom wrongfully possesses and maintains dominion and control over the membership interest in NGA, including, without limitation, the books and records relating to the same, identified by the Strom MISA.

101.     Pursuant to Nevada Revised Statute 31.840, Plaintiff, in an action to recover the possession of personal property may, at the time of issuing the summons, or at any time before answer, claim the delivery of such property to Plaintiff as provided in Chapter 31 of the Nevada Revised Statutes.

102.     Plaintiff is a secured creditor as defined by Chapter 104 of the Nevada Revised Statute 104, and it entitled to possession without undertaking pursuant to Nevada Revised Statute 31.863(2).

<u>**FOURTH CLAIM FOR RELIEF**</u>

**(Declaratory Relief – against all Defendants)**

103.     Plaintiff repeats, realleges, and incorporates all of the preceding allegations as though fully set forth herein.

104.     Under Nevada Revised Statutes 30.010, et seq., the Uniform Declaratory Judgment Act, any person interested under a written contract may have determined any question

9358418_1

of construction or validity arising under the contract.

105.    There are actual and justiciable controversies concerning the legal rights between Defendant and Plaintiff in connection with the MLA, the Note, the GSA, the Conditional Assignments, the Martinez MISA, and the Strom MISA.

106.    Plaintiff is entitled to a determination and judicial declaration of Plaintiff's legal rights as related to the MLA, the Note, the GSA, the Conditional Assignments, the Martinez MISA, and the Strom MISA.

107.    A controversy exists between the parties.

108.    Plaintiff is entitled to a declaratory judgment that the MLA, the Note, the GSA, the Conditional Assignments, the Martinez MISA, and the Strom MISA are valid and enforceable contracts.

109.    Plaintiff is entitled to a declaratory judgment that the collateral identified in the GSA was pledged as security for the repayment of the Note and the Plaor Loans.

110.    Plaintiff is entitled to a declaratory judgment that the collateral identified in the Conditional Assignments, including, without limitation, the IP and any and all interest in the License Agreement, was pledged as security for the repayment of the Note and the Plaor Loans.

111.    Plaintiff is entitled to a declaratory judgment that the collateral identified in the Martinez MISA, including, without limitation, any and all membership interest of Mr. Martinez in NGA, was pledged as security for the repayment of the Note and the Plaor Loans.

112.    Plaintiff is entitled to a declaratory judgment that the collateral identified in the Strom MISA, including, without limitation, any and all membership interest of Mr. Strom in NGA, was pledged as security for the repayment of the Note and the Plaor Loans.

113.    Plaintiff is entitled to a declaratory judgment that every aspect of the anticipated disposition of all collateral, once obtained by Plaintiff, including the method, manner, time, place, and other terms, is commercially reasonable pursuant to Chapter 104 of the Nevada Revised Statutes.

9358418_1

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd FloorLas Vegas, NV  89134

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

1.      For an award of damages in an amount in excess of $505,000.00;

2.      For an writ of possession requiring Defendants to assemble and make available the collateral identified in the GSA, the Conditional Assignments, the Martinez MISA, and the Strom MISA to Plaintiff;

3.      For costs of suit and reasonable attorney's fees;

4.      For a judgment declaring Plaintiff's rights pursuant to the MLA, the Note, the GSA, the Conditional Assignments, the Martinez MISA, and the Strom MISA

5.      For a judgment declaring that the collateral identified in the GSA, the Conditional Assignments, the Martinez MISA, and the Strom MISA was pledged as security for repayment of the Note and the Plaor Loans;

6.      For a judgment declaring that Plaintiff's anticipated disposition of all collateral including the method, manner, time, place, and other terms, is commercially reasonable pursuant to Chapter 104 of the Nevada Revised Statutes; and

7.      For such other and further relief as this Court deems just, proper, and equitable.

DATED this 18th day of November, 2016

HOLLAND & HART LLP

*/s/ Joseph G. Went, Esq.*

Joseph G. Went, Esq.
Nevada Bar No. 9220
Sydney R. Gambee, Esq.
Nevada Bar No. 14201
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

*Attorneys for Peter Lee*

9358418_1